O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALAN JAMES FREAR,                  ) Case No. CV 12-4532-JPR
                                   )
                Plaintiff,         )
                                   )
            vs.                    ) MEMORANDUM OPINION AND ORDER
                                   ) AFFIRMING THE COMMISSIONER
MICHAEL J. ASTRUE,                 )
Commissioner of the Social         )
Security Administration,           )
                                   )
                Defendant.         )
_____)

I.    PROCEEDINGS

      Plaintiff seeks review of the Commissioner's final decision
denying his application for Social Security Supplemental Security
Income benefits ("SSI").  The parties consented to the
jurisdiction of the undersigned U.S. Magistrate Judge pursuant to
28 U.S.C. § 636(c).  The matter is before the Court on the
parties' Joint Stipulation, filed January 22, 2013, which the
Court has taken under submission without oral argument.  For the
reasons stated below, the Commissioner's decision is affirmed and
this action is dismissed.

II.   BACKGROUND

      Plaintiff was born on December 22, 1955.  (Administrative

1  Record ("AR") 53.)  He finished high school (AR 110), though

2  there is some debate over whether he did so while enrolled in

3  special education classes (compare AR 39 (Plaintiff testifying

4  that he took special education classes during high school in

5  "like math, history, English") with AR 110 (disability form

6  indicating that Plaintiff was not enrolled in special education

7  classes during high school)).[1]  He is homeless (AR 128) and has

8  not worked since the early 1990s at the latest (AR 107).

9      Plaintiff filed an application for SSI benefits on May 30,

10  2008 (AR 89), claiming that he had been disabled since August 1,

11  1996 (AR 102), on account of "dyslexia/bad back/can't read" (AR

12  107).  After Plaintiff's application was denied, he requested a

13  hearing before an ALJ.  (AR 46.)  A hearing was held on January

14  5, 2010, at which Plaintiff, who was represented by counsel,

15  appeared and testified.  (AR 31, 37-40.)  In a written decision

16  issued on February 24, 2010, the ALJ determined that Plaintiff

17  was not disabled.  (AR 28.)  On April 9, 2012, the Appeals

18  Council denied Plaintiff's request for review.  (AR 1.)  This

19  action followed.

20  **III. STANDARD OF REVIEW**

21      Pursuant to 42 U.S.C. § 405(g), a district court may review

22  the Commissioner's decision to deny benefits.  The ALJ's findings

23  and decision should be upheld if they are free of legal error and

24  are supported by substantial evidence based on the record as a

25  whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.

26  Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481

27  _____

28      [1]   Plaintiff's high school records were apparently no
   longer available.  (AR 87.)

2

1  F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such
2  evidence as a reasonable person might accept as adequate to
3  support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter
4  v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than
5  a scintilla but less than a preponderance.  Lingenfelter, 504
6  F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880,
7  882 (9th Cir. 2006)).  To determine whether substantial evidence
8  supports a finding, the reviewing court "must review the
9  administrative record as a whole, weighing both the evidence that
10 supports and the evidence that detracts from the Commissioner's
11 conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
12 1996).  "If the evidence can reasonably support either affirming
13 or reversing," the reviewing court "may not substitute its
14 judgment" for that of the Commissioner.  Id. at 720-21.
15 **IV.  THE EVALUATION OF DISABILITY**
16     People are "disabled" for purposes of receiving Social
17 Security benefits if they are unable to engage in any substantial
18 gainful activity owing to a physical or mental impairment that is
19 expected to result in death or which has lasted, or is expected
20 to last, for a continuous period of at least 12 months.  42
21 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257
22 (9th Cir. 1992).
23     A.   The Five-Step Evaluation Process
24     The ALJ follows a five-step sequential evaluation process in
25 assessing whether a claimant is disabled.  20 C.F.R.
26 § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir.
27 1995) (as amended Apr. 9, 1996).  In the first step, the
28 Commissioner must determine whether the claimant is currently

3

engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is presumed and benefits are awarded. § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled

---

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1 because he can perform other substantial gainful work available

2 in the national economy.  § 416.920(a)(4)(v).  That determination

3 comprises the fifth and final step in the sequential analysis.

4 § 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

5        B.   <u>The ALJ's Application of the Five-Step Process</u>

6        At step one, the ALJ found that Plaintiff had not engaged in

7 any substantial gainful activity since May 30, 2008, the

8 application date.  (AR 22.)  At step two, the ALJ concluded that

9 Plaintiff had the severe impairments of "degenerative disc

10 disease of the lumbar spine, obesity, borderline intellectual

11 functioning, and dyslexia."  (<u>Id.</u>)  At step three, the ALJ

12 determined that Plaintiff's impairments did not meet or equal any

13 of the impairments in the Listing.  (<u>Id.</u>)  At step four, the ALJ

14 found that Plaintiff retained the RFC to perform "light work"[3]

15 with certain additional limitations, including only those

16 "activities involving no more than simple tasks with simple work-

17 related decisions."  (AR 24.)  At step five, the ALJ concluded

18 that jobs existed in significant numbers in the national economy

19 that Plaintiff could perform.  (AR 27.)  Accordingly, the ALJ

20 determined that Plaintiff was not disabled.  (AR 28.)

21

22     [3]   "Light work" is defined as work involving "lifting no
more than 20 pounds at a time with frequent lifting or carrying
23 of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).
The regulations further specify that "[e]ven though the weight
24 lifted may be very little, a job is in this category when it
requires a good deal of walking or standing, or when it involves
25 sitting most of the time with some pushing and pulling of arm or
leg controls."  <u>Id.</u>  A person capable of light work is also
26 capable of "sedentary work," which involves lifting "no more than
10 pounds at a time and occasionally lifting or carrying [small
27 articles]" and may involve occasional walking or standing.
28 § 416.967(a)-(b).

**V.    RELEVANT FACTS**

The record does not contain any treatment notes or other medical evidence of any kind for Plaintiff other than that generated as part of his SSI claim.  On July 18, 2008, consulting clinical psychologist Rosa Colonna examined Plaintiff and administered a series of tests to him.  (AR 149-53.)  She determined that he had a verbal IQ of 76, a performance IQ of 70, and a full scale IQ of 72.  (AR 151.)  She concluded that his "[c]urrent intellectual functioning is borderline range" but that he could work.  (AR 151-53.)  On July 10, 2008, Dr. Seung Ha Lim examined Plaintiff.  (AR 155-58.)  Based on Plaintiff's pain on motion, back tenderness, and limited range of motion of the back, he ordered an xray, which showed "severe degenerative disease at L4-5 and moderate degenerative disease at L5-S1 with partial sacralization of L5."  (AR 159.)

In finding that Plaintiff was not disabled, the ALJ considered whether Plaintiff met or equaled various Listings. (AR 22-24.)  As to Listing 12.05C, the ALJ noted Plaintiff's IQ scores and then found as follows,

[G]iven the margin of error in such testing . . . it is
as likely as not that all of his IQ scores are squarely
in the borderline range.[4]  Additionally, there is no
evidence   of   significantly   sub   average   general

---

[4]    "Borderline intellectual functioning" indicates that a person has below average cognitive ability, that is, an IQ of 71 to 85, but the deficit is not as severe as "mental retardation," which is defined as having an IQ of 70 or below.  Baines v. Astrue, No. EDCV 09-1121-MLG, 2011 WL 3759040, at *3 (C.D. Cal. Aug. 25, 2011) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994)).

intellectual functioning with deficits in adaptive
functioning initially manifested during the developmental
period; i.e., the evidence demonstrates or supports onset
of the impairment before age 22.  The claimant testified
that he was in special education classes for math,
history and English; however, he also noted that he
graduated high school.  Although the scales may be tipped
in the claimant's favor if the record demonstrated an
onset prior to age 22, due to this lack of evidence, the
undersigned adopts the opinion of the consultative
examiner, Rosa Colonna, Ph.D., who found the claimant's
"overall cognitive ability to fall within the borderline
range."  Therefore the undersigned finds the claimant's
borderline intellectual functioning does not meet the
criteria of 12.05C.

(AR 23.)

At various times, Plaintiff has claimed to be illiterate.
(AR 39, 107.)  At the hearing before the ALJ, however, his
counsel did not go quite so far: she stated that Plaintiff's
"ability to read is minimal and he is essentially illiterate."
(AR 35.)

In his decision, the ALJ rejected Plaintiff's claim not to
be able to read and found Plaintiff's credibility generally
limited.  (AR 25.)  In addition to noting the tension between
Plaintiff's claims to have been enrolled in special education
classes and to not be able to read and his having graduated from
high school (AR 23), the ALJ found as follows:

In regards to the claimant's borderline intellectual

7

functioning, there is no evidence that the claimant is
illiterate as he alleged at the hearing.  In fact, the
claimant took two diagnostic tests at the consultative
examination . . . and did not report any difficulties
with reading to Dr. Colonna.  Furthermore, the claimant
noted in a prior disability report that he was capable of
reading and understanding English.  Moreover, the
claimant filled out a handwritten function report which
more than suggests that claimant is capable of basic
reading and writing skills.  Therefore, due to the total
lack of evidence supporting this contention, the
undersigned does not find the claimant to be illiterate
as he alleged.

(AR 26 (exhibit citations omitted).)  The ALJ also found that
"the claimant's statements concerning the intensity, persistence
and limiting effects of [his] symptoms are not credible to the
extent they are inconsistent with the . . . residual functional
capacity assessment."  (AR 25.)

As the ALJ noted, Plaintiff had on several of his
application forms indicated that he could read and understand
English.  (See, e.g., AR 106.)  In a handwritten function report,
the blank for "name of person completing this form" listed "Alan
James Frear."  (AR 132.)  Plaintiff answered all of the questions
on the form in simple phrases that were responsive, presumably
after first reading the applicable question; he did write "don't
understand" below the section asking for any additional
information he might like to add.  (AR 132.)  And on some of the
forms on which he indicated that he could read and understand

English, he also indicated "can't read" or "can't work because I can't read, I need help with the applications, I can't read with understanding."  (AR 107, 181.)  In his disability application, Plaintiff stated that in his late-1970s jobs as a courier and truck loader, he did perform duties like "writing" and "complet[ing] reports."  (AR 108.)

## VI.   DISCUSSION

Plaintiff alleges that the ALJ erred in (1) concluding that he did not meet or equal Listing 12.05C and (2) finding that Plaintiff was not illiterate.

A.   The ALJ Did Not Err in Determining that Plaintiff's Condition Did Not Meet or Equal Listing 12.05C

1.   Applicable law

At step three of the sequential disability-evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in the Listings.  See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Conditions set forth in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828.  The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." Sullivan v. Zebley, 493 U.S. 521, 532, 110 S. Ct. 885, 892, 107 L. Ed. 2d 967 (1990).  If a claimant shows that his impairments meet or equal a Listing, he is presumptively disabled.  §§ 416.925–416.926; see Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1221–22 (9th Cir. 2010).

9

1    The claimant has the initial burden of proving that an

2 impairment meets or equals a Listing.  See Zebley, 493 U.S. at

3 530-33.  "To *meet* a listed impairment, a claimant must establish

4 that he or she meets each characteristic of a listed impairment

5 relevant to his or her claim."  Tackett, 180 F.3d at 1099.  "To

6 *equal* a listed impairment, a claimant must establish symptoms,

7 signs and laboratory findings 'at least equal in severity and

8 duration' to the characteristics of a relevant listed impairment,

9 or, if a claimant's impairment is *not* listed, then to the listed

10 impairment 'most like' the claimant's impairment."  Id.

11    An ALJ "must evaluate the relevant evidence before

12 concluding that a claimant's impairments do not meet or equal a

13 listed impairment."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir.

14 2001).  An ALJ's decision that a plaintiff has not met a Listing

15 must be upheld if it was supported by substantial evidence.  See

16 Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th

17 Cir. 2006).

18    Under Listing 12.05C, a plaintiff must be found disabled if

19 he shows the following:

20    12.05 Mental Retardation: Mental retardation refers to

21    significantly subaverage general intellectual functioning

22    with   deficits   in   adaptive   functioning   initially

23    manifested during the developmental period; i.e., the

24    evidence   demonstrates   or   supports   onset   of   the

25    impairments before age 22.   The required level of

26    severity for this disorder is met when the requirements

27    in A, B, C, or D are satisfied.

28    . . . .

10

1
      C. A valid verbal, performance, or full scale IQ of 60

2
      through 70 and a physical or other mental impairment

3
      imposing an additional and significant work-related

4
      limitation of function[.]

5
20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05.

6
      2.   <u>Discussion</u>

7
     The parties disagree on whether the ALJ properly rejected

8
Plaintiff's one IQ score that qualified under Listing 12.05C, his

9
performance IQ of 70 – the highest possible number meeting the

10
Listing's requirements – because of the margin of error and the

11
fact that other evidence in the record showed that Plaintiff was

12
"squarely in the borderline range."  Whether or not the ALJ erred

13
in this regard makes no difference because substantial evidence

14
supported his finding that no credible evidence showed that

15
Plaintiff's impairments began before he turned 22, as Listing

16
12.05C requires.  Plaintiff claims that the fact that he was

17
allegedly enrolled in special education classes in high school

18
demonstrates that the impairment began before he turned 22.[5]

19
Plaintiff bears the burden of demonstrating his eligibility for a

20
listing, <u>Zebley</u>, 493 U.S. at 530-33, and the only evidence in the

21
record supporting his claim that he took special education

22
classes in high school was his own word.  The ALJ found Plaintiff

23

24
     [5]   The Court assumes for the sake of Plaintiff's argument
that enrollment in special education classes during high school

25
would demonstrate that the "deficits in adaptive functioning
initially manifested during the developmental period."  <u>But see,</u>

26
<u>e.g.</u>, <u>Tillemans v. Astrue</u>, No. 2:12-cv-00127-PMP-RJJ, 2012 WL
6949606, at *9 (D. Nev. Nov. 20, 2012) (IQ score of 69 at age 40

27
and one year of special education classes not sufficient to show
mental impairment before age 22), <u>accepted by</u> 2013 WL 326323

28
(Jan. 28, 2013).

not fully credible, however, a finding Plaintiff does not

directly challenge, likely because ample evidence in the record

supported it.  (See, e.g., AR 104, 111 (agency administrators

noting Plaintiff's inconsistent stories); AR 23-27 (ALJ detailing

inconsistencies between record and Plaintiff's claims).)  Indeed,

one of Plaintiff's application forms specifically stated that he

had not been enrolled in special education classes in high

school.  (AR 110.)  Because substantial evidence existed in the

record supporting the ALJ's conclusion that Plaintiff had not met

his burden to show that the impairment began before the age of

22, the ALJ must be affirmed on this ground.[6]

> B.   The ALJ Did Not Improperly Find that Plaintiff Was Not
>      Illiterate

Plaintiff claims that the ALJ erred in concluding that he

was not illiterate.  He contends that because he is in fact

illiterate, Rule 202.09, which pertains to those "closely

approaching advanced age," dictated that he was disabled.  (J.

---

[6] Some circuits, although not the Ninth, have held that
an IQ score of 70 or below at any age creates a rebuttable
presumption that the person had deficits in adaptive functioning
before age 22.  See, e.g., Hodges v. Barnhart, 276 F.3d 1265,
1269 (11th Cir. 2001).  The Court is not persuaded by those cases
for the reasons expressed in Rhein v. Astrue, No. 1:09-cv-01754-
JLT, 2010 WL 4877796, at *7 (E.D. Cal. Nov. 23, 2010), and for
the additional reason that this presumption would seemingly apply
in every case where Listing 12.05C was at issue, as a Plaintiff
would not argue that he could meet or equal the Listing unless he
had at least one IQ score after age 22 of 70 or below.  In any
event, even if such a rebuttable presumption applied in this
Circuit, and even if it applied in light of the ALJ's finding
that Plaintiff's one score of 70 was not representative of his
intellectual functioning, Plaintiff's graduation from high school
and his prior work experience would suffice to rebut the
presumption.

Stip. at 11-13 (citing 20 C.F.R. Part 404, Subpt. P, App. 2, R. 202.09).)

### 1.   Applicable law

If no evidence contradicts it, an ALJ should use the numerical grade level a claimant has achieved to determine his educational abilities.  20 C.F.R. § 416.964(b).  "Illiterate"

> means the inability to read or write.  We consider
> someone illiterate if the person cannot read or write a
> simple message such as instructions or inventory lists
> even though the person can sign his or her name.
> Generally, an illiterate person has had little or no
> formal schooling.

Id. § 416.964(b)(1).  Those with a high school education, on the other hand, are generally considered to be able to do "semi-skilled through skilled work."  Id. § 416.964(b)(4).

### 2.   Discussion

Substantial evidence in the record supported the ALJ's conclusion that Plaintiff was not illiterate.  As the ALJ noted, Plaintiff filled out a form on which he apparently read the questions asked and responded appropriately with multiword phrases.  The fact that he understood and could read the majority of the questions is borne out by his writing "don't understand" in response to one question.  (AR 132.)  Plaintiff claims that a comparison of the handwriting on the form with other examples of his writing in the record shows that the form was not really filled out by him, or at the very least triggered a duty in the ALJ to inquire further.  (J. Stip. at 12.)  But Plaintiff is comparing his printed name to examples of his signature.

13

1   (Compare AR 132 with AR 55, 82, 145-46.)  Moreover, the
2   handwriting repeatedly uses the first person, indicating that it
3   was actually completed by Plaintiff.  (See, e.g., AR 125 ("I am
4   homeless"), AR 126 ("I have been this way for years," "I sleep
5   about two hours a night"), AR 127 ("I live in the car," "it's the
6   money I don't have"), AR 128 ("I don't live in a house"), AR 131
7   ("people scare me").)  There was no cause for the ALJ to believe
8   that someone other than Plaintiff had filled out the form.

9       Further, Plaintiff acknowledged on his application materials
10  that he could read and understand English.  (AR 106.)  By his own
11  admission he held jobs in the late 1970s and early 1980s, when he
12  was in his late 20s, that required him to "perform duties like"
13  "writing" and "complet[ing] reports" (AR 108), and nothing in the
14  record indicates, nor does Plaintiff claim, that something
15  happened to him after that time that caused him to become
16  illiterate; indeed, to the contrary, Plaintiff claims that
17  whatever cognitive impairments he does have have existed since
18  before age 22, which itself seemingly contradicts his claim that
19  he became unable to work – because "I can't read with
20  understanding" – only in August 1996 (AR 107).

21      Although since applying for disability benefits Plaintiff
22  has claimed that he can't read, the ALJ had a substantial basis
23  in the record to reject that claim.  As noted, Plaintiff himself
24  has at times acknowledged that he can read and understand
25  English.  One of the administrators who interviewed Plaintiff in
26  connection with his application noted that "he changed his story
27  several times regarding his medical condition and alleged
28  disabilities."  (AR 111.)  No medical records or treatment notes

14

supported Plaintiff's claim that he had dyslexia.  Even counsel acknowledged that Plaintiff was not truly illiterate, in that he had "minimal" "ability to read."[7]  (AR 35.)  Under the Social Security regulations, true illiteracy requires "the inability to read or write a simple message."  20 C.F.R. § 416.964(b)(1). Plaintiff's handwritten completion of the disability form was alone substantial evidence on which the ALJ could rely to find that Plaintiff was not illiterate.  Accordingly, the ALJ did not err.

**VII.  CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 6, 2013

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[7]    The ALJ took Plaintiff's limited reading skills into account by accepting the vocational expert's testimony that the jobs she found Plaintiff could perform required only "very minimal" language and reading skills.  (AR 28, 44.)

[8]    This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."