O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JAMES FREAR,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　Defendant. | ) Case No. CV 12-4532-JPR<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>) AFFIRMING THE COMMISSIONER<br>)<br>)<br>)<br>)<br>)<br>) |

**I.　PROCEEDINGS**

　　Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security Supplemental Security Income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed January 22, 2013, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

**II.　BACKGROUND**

　　Plaintiff was born on December 22, 1955.  (Administrative

Record ("AR") 53.) He finished high school (AR 110), though there is some debate over whether he did so while enrolled in special education classes (compare AR 39 (Plaintiff testifying that he took special education classes during high school in "like math, history, English") with AR 110 (disability form indicating that Plaintiff was not enrolled in special education classes during high school)).[1] He is homeless (AR 128) and has not worked since the early 1990s at the latest (AR 107).

Plaintiff filed an application for SSI benefits on May 30, 2008 (AR 89), claiming that he had been disabled since August 1, 1996 (AR 102), on account of "dyslexia/bad back/can't read" (AR 107). After Plaintiff's application was denied, he requested a hearing before an ALJ. (AR 46.) A hearing was held on January 5, 2010, at which Plaintiff, who was represented by counsel, appeared and testified. (AR 31, 37-40.) In a written decision issued on February 24, 2010, the ALJ determined that Plaintiff was not disabled. (AR 28.) On April 9, 2012, the Appeals Council denied Plaintiff's request for review. (AR 1.) This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and are supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481

---

[1] Plaintiff's high school records were apparently no longer available. (AR 87.)

F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

    A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently

engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is presumed and benefits are awarded. § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

because he can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 30, 2008, the application date. (AR 22.) At step two, the ALJ concluded that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, obesity, borderline intellectual functioning, and dyslexia." (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (Id.) At step four, the ALJ found that Plaintiff retained the RFC to perform "light work"[3] with certain additional limitations, including only those "activities involving no more than simple tasks with simple work-related decisions." (AR 24.) At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (AR 27.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 28.)

---

[3] "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]" and may involve occasional walking or standing. § 416.967(a)-(b).

## V. RELEVANT FACTS

The record does not contain any treatment notes or other medical evidence of any kind for Plaintiff other than that generated as part of his SSI claim. On July 18, 2008, consulting clinical psychologist Rosa Colonna examined Plaintiff and administered a series of tests to him. (AR 149-53.) She determined that he had a verbal IQ of 76, a performance IQ of 70, and a full scale IQ of 72. (AR 151.) She concluded that his "[c]urrent intellectual functioning is borderline range" but that he could work. (AR 151-53.) On July 10, 2008, Dr. Seung Ha Lim examined Plaintiff. (AR 155-58.) Based on Plaintiff's pain on motion, back tenderness, and limited range of motion of the back, he ordered an xray, which showed "severe degenerative disease at L4-5 and moderate degenerative disease at L5-S1 with partial sacralization of L5." (AR 159.)

In finding that Plaintiff was not disabled, the ALJ considered whether Plaintiff met or equaled various Listings. (AR 22-24.) As to Listing 12.05C, the ALJ noted Plaintiff's IQ scores and then found as follows,

> [G]iven the margin of error in such testing . . . it is as likely as not that all of his IQ scores are squarely in the borderline range.[4]  Additionally, there is no evidence of significantly sub average general

---

[4] "Borderline intellectual functioning" indicates that a person has below average cognitive ability, that is, an IQ of 71 to 85, but the deficit is not as severe as "mental retardation," which is defined as having an IQ of 70 or below. Baines v. Astrue, No. EDCV 09-1121-MLG, 2011 WL 3759040, at *3 (C.D. Cal. Aug. 25, 2011) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994)).

>     intellectual functioning with deficits in adaptive
>     functioning initially manifested during the developmental
>     period; i.e., the evidence demonstrates or supports onset
>     of the impairment before age 22. The claimant testified
>     that he was in special education classes for math,
>     history and English; however, he also noted that he
>     graduated high school. Although the scales may be tipped
>     in the claimant's favor if the record demonstrated an
>     onset prior to age 22, due to this lack of evidence, the
>     undersigned adopts the opinion of the consultative
>     examiner, Rosa Colonna, Ph.D., who found the claimant's
>     "overall cognitive ability to fall within the borderline
>     range." Therefore the undersigned finds the claimant's
>     borderline intellectual functioning does not meet the
>     criteria of 12.05C.

(AR 23.)

At various times, Plaintiff has claimed to be illiterate. (AR 39, 107.) At the hearing before the ALJ, however, his counsel did not go quite so far: she stated that Plaintiff's "ability to read is minimal and he is essentially illiterate." (AR 35.)

In his decision, the ALJ rejected Plaintiff's claim not to be able to read and found Plaintiff's credibility generally limited. (AR 25.) In addition to noting the tension between Plaintiff's claims to have been enrolled in special education classes and to not be able to read and his having graduated from high school (AR 23), the ALJ found as follows:

>     In regards to the claimant's borderline intellectual

>functioning, there is no evidence that the claimant is illiterate as he alleged at the hearing. In fact, the claimant took two diagnostic tests at the consultative examination . . . and did not report any difficulties with reading to Dr. Colonna. Furthermore, the claimant noted in a prior disability report that he was capable of reading and understanding English. Moreover, the claimant filled out a handwritten function report which more than suggests that claimant is capable of basic reading and writing skills. Therefore, due to the total lack of evidence supporting this contention, the undersigned does not find the claimant to be illiterate as he alleged.

(AR 26 (exhibit citations omitted).) The ALJ also found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR 25.)

As the ALJ noted, Plaintiff had on several of his application forms indicated that he could read and understand English. (See, e.g., AR 106.) In a handwritten function report, the blank for "name of person completing this form" listed "Alan James Frear." (AR 132.) Plaintiff answered all of the questions on the form in simple phrases that were responsive, presumably after first reading the applicable question; he did write "don't understand" below the section asking for any additional information he might like to add. (AR 132.) And on some of the forms on which he indicated that he could read and understand

English, he also indicated "can't read" or "can't work because I can't read, I need help with the applications, I can't read with understanding." (AR 107, 181.) In his disability application, Plaintiff stated that in his late-1970s jobs as a courier and truck loader, he did perform duties like "writing" and "complet[ing] reports." (AR 108.)

**VI. DISCUSSION**

Plaintiff alleges that the ALJ erred in (1) concluding that he did not meet or equal Listing 12.05C and (2) finding that Plaintiff was not illiterate.

    A.    <u>The ALJ Did Not Err in Determining that Plaintiff's Condition Did Not Meet or Equal Listing 12.05C</u>

        1.    <u>Applicable law</u>

At step three of the sequential disability-evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in the Listings. See 20 C.F.R § 416.920(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Conditions set forth in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." <u>Lester</u>, 81 F.3d at 828. The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532, 110 S. Ct. 885, 892, 107 L. Ed. 2d 967 (1990). If a claimant shows that his impairments meet or equal a Listing, he is presumptively disabled. §§ 416.925–416.926; <u>see</u> <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1221–22 (9th Cir. 2010).

The claimant has the initial burden of proving that an impairment meets or equals a Listing. See Zebley, 493 U.S. at 530-33. "To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett, 180 F.3d at 1099. "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." Id.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). An ALJ's decision that a plaintiff has not met a Listing must be upheld if it was supported by substantial evidence. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Under Listing 12.05C, a plaintiff must be found disabled if he shows the following:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairments before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05.

### 2. Discussion

The parties disagree on whether the ALJ properly rejected Plaintiff's one IQ score that qualified under Listing 12.05C, his performance IQ of 70 – the highest possible number meeting the Listing's requirements – because of the margin of error and the fact that other evidence in the record showed that Plaintiff was "squarely in the borderline range." Whether or not the ALJ erred in this regard makes no difference because substantial evidence supported his finding that no credible evidence showed that Plaintiff's impairments began before he turned 22, as Listing 12.05C requires. Plaintiff claims that the fact that he was allegedly enrolled in special education classes in high school demonstrates that the impairment began before he turned 22.[5] Plaintiff bears the burden of demonstrating his eligibility for a listing, Zebley, 493 U.S. at 530-33, and the only evidence in the record supporting his claim that he took special education classes in high school was his own word. The ALJ found Plaintiff

---

[5] The Court assumes for the sake of Plaintiff's argument that enrollment in special education classes during high school would demonstrate that the "deficits in adaptive functioning initially manifested during the developmental period." But see, e.g., Tillemans v. Astrue, No. 2:12-cv-00127-PMP-RJJ, 2012 WL 6949606, at *9 (D. Nev. Nov. 20, 2012) (IQ score of 69 at age 40 and one year of special education classes not sufficient to show mental impairment before age 22), accepted by 2013 WL 326323 (Jan. 28, 2013).

not fully credible, however, a finding Plaintiff does not directly challenge, likely because ample evidence in the record supported it. (See, e.g., AR 104, 111 (agency administrators noting Plaintiff's inconsistent stories); AR 23-27 (ALJ detailing inconsistencies between record and Plaintiff's claims).) Indeed, one of Plaintiff's application forms specifically stated that he had <u>not</u> been enrolled in special education classes in high school. (AR 110.) Because substantial evidence existed in the record supporting the ALJ's conclusion that Plaintiff had not met his burden to show that the impairment began before the age of 22, the ALJ must be affirmed on this ground.[6]

### B. The ALJ Did Not Improperly Find that Plaintiff Was Not Illiterate

Plaintiff claims that the ALJ erred in concluding that he was not illiterate. He contends that because he is in fact illiterate, Rule 202.09, which pertains to those "closely approaching advanced age," dictated that he was disabled. (J.

---

[6] Some circuits, although not the Ninth, have held that an IQ score of 70 or below at any age creates a rebuttable presumption that the person had deficits in adaptive functioning before age 22. See, e.g., Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001). The Court is not persuaded by those cases for the reasons expressed in Rhein v. Astrue, No. 1:09-cv-01754-JLT, 2010 WL 4877796, at *7 (E.D. Cal. Nov. 23, 2010), and for the additional reason that this presumption would seemingly apply in every case where Listing 12.05C was at issue, as a Plaintiff would not argue that he could meet or equal the Listing unless he had at least one IQ score after age 22 of 70 or below. In any event, even if such a rebuttable presumption applied in this Circuit, and even if it applied in light of the ALJ's finding that Plaintiff's one score of 70 was not representative of his intellectual functioning, Plaintiff's graduation from high school and his prior work experience would suffice to rebut the presumption.

```
1  Stip. at 11-13 (citing 20 C.F.R. Part 404, Subpt. P, App. 2, R.
2  202.09).)
```

### 1. Applicable law

If no evidence contradicts it, an ALJ should use the numerical grade level a claimant has achieved to determine his educational abilities. 20 C.F.R. § 416.964(b). "Illiterate"

> means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

Id. § 416.964(b)(1). Those with a high school education, on the other hand, are generally considered to be able to do "semi-skilled through skilled work." Id. § 416.964(b)(4).

### 2. Discussion

Substantial evidence in the record supported the ALJ's conclusion that Plaintiff was not illiterate. As the ALJ noted, Plaintiff filled out a form on which he apparently read the questions asked and responded appropriately with multiword phrases. The fact that he understood and could read the majority of the questions is borne out by his writing "don't understand" in response to one question. (AR 132.) Plaintiff claims that a comparison of the handwriting on the form with other examples of his writing in the record shows that the form was not really filled out by him, or at the very least triggered a duty in the ALJ to inquire further. (J. Stip. at 12.) But Plaintiff is comparing his printed name to examples of his signature.

13

(Compare AR 132 with AR 55, 82, 145-46.)  Moreover, the handwriting repeatedly uses the first person, indicating that it was actually completed by Plaintiff.  (See, e.g., AR 125 ("I am homeless"), AR 126 ("I have been this way for years," "I sleep about two hours a night"), AR 127 ("I live in the car," "it's the money I don't have"), AR 128 ("I don't live in a house"), AR 131 ("people scare me").)  There was no cause for the ALJ to believe that someone other than Plaintiff had filled out the form.

Further, Plaintiff acknowledged on his application materials that he could read and understand English.  (AR 106.)  By his own admission he held jobs in the late 1970s and early 1980s, when he was in his late 20s, that required him to "perform duties like" "writing" and "complet[ing] reports" (AR 108), and nothing in the record indicates, nor does Plaintiff claim, that something happened to him after that time that caused him to become illiterate; indeed, to the contrary, Plaintiff claims that whatever cognitive impairments he does have have existed since before age 22, which itself seemingly contradicts his claim that he became unable to work – because "I can't read with understanding" – only in August 1996 (AR 107).

Although since applying for disability benefits Plaintiff has claimed that he can't read, the ALJ had a substantial basis in the record to reject that claim.  As noted, Plaintiff himself has at times acknowledged that he can read and understand English.  One of the administrators who interviewed Plaintiff in connection with his application noted that "he changed his story several times regarding his medical condition and alleged disabilities."  (AR 111.)  No medical records or treatment notes

14

supported Plaintiff's claim that he had dyslexia.  Even counsel acknowledged that Plaintiff was not truly illiterate, in that he had "minimal" "ability to read."[7]  (AR 35.)  Under the Social Security regulations, true illiteracy requires "the inability to read or write a simple message."  20 C.F.R. § 416.964(b)(1). Plaintiff's handwritten completion of the disability form was alone substantial evidence on which the ALJ could rely to find that Plaintiff was not illiterate.  Accordingly, the ALJ did not err.

## VII. CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 6, 2013

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[7]  The ALJ took Plaintiff's limited reading skills into account by accepting the vocational expert's testimony that the jobs she found Plaintiff could perform required only "very minimal" language and reading skills.  (AR 28, 44.)

[8]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."